UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

Eric Greenberg,

                  Plaintiff,

              -vs-

Hudson Bay Master Fund Ltd., Iroquois Master
Fund Ltd., American Capital Management LLC,
GRQ Consultants, Inc. 401K, Barry Honig,
Richard Molinsky, and WPCS International
Incorporated,

                  Defendants.

-------------------------------------------------------------x

Case No.: 14 Civ. 5226 (DLC)

ECF Case


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
COMPLAINT AGAINST HUDSON BAY MASTER FUND LTD.**


SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000
Facsimile: 212.593.5955

*Attorneys for Defendant Hudson Bay Master
Fund Ltd.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

       A.      Hudson Bay Fund's Alleged Purchase and Sale of WPCS Stock. ..............3

       B.      The BTX Transaction. ..................................................................................5

ARGUMENT .............................................................................................................5

    I. STANDARD OF REVIEW .............................................................................5

    II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 16(b)............6

       A.      Section 16(b) Is Literally and Mechanically Construed. ...........................7

       B.      Hudson Bay Fund Is Not a "Statutory Insider" as a Matter of Law. ..........9

              1.      Capital Management, Not Hudson Bay Fund, Controls the WPCS Stock at Issue. ..................................................................10

                    (a)      A Schedule 13G referenced in the Complaint flatly contradicts Plaintiff's assertions that Hudson Bay Fund is a beneficial owner of the WPCS Stock. .........................10

                    (b)      As an Investment Adviser, Capital Management is exempt from Section 16(b)'s reach....................................11

              2.      Hudson Bay Fund Never Had the Right to Acquire More than Ten Percent of WPCS Common Stock. .........................................13

              3.      Hudson Bay Fund Was Not a Member of a "Group" Pursuant to Sections 13 and 16. .................................................................17

                      (a)      Plaintiff's recitation of administrative terms from the SPA and Rights Agreement is insufficient to allege group activity. .................................................................18

                      (b)      The BTX Transaction does not support the plausible inference of group activity. ................................................21

                      (c)      Even if Hudson Bay Fund and the Other Investor Defendants had formed a group, the Blocker Provisions would still prevent any member of the group from becoming a beneficial owner. .........................23

i

       C.      The Complaint Fails to Match Purchases to Sales......................................25

CONCLUSION...................................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)....................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................5, 6, 21

*Bennigson v. Huntsman*,
    13-cv-452 (KBF), 2013 WL 5348461 (S.D.N.Y. Sept. 24, 2013).....................................7, 25

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)......................................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991).........................................................................................6

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010).....................................................................................6

*Donaghue v. Accenture Ltd.*,
    03-cv-8329 (NRB), 2004 WL 1823448 (S.D.N.Y. Aug. 16, 2004).....................................18

*Donoghue v. Murdock*,
    13-cv-1224 (PAE), 2013 WL 4007565 (S.D.N.Y. Aug. 6, 2013) ...........................................7

*Donoghue v. Patterson Cos., Inc.*,
    990 F. Supp. 2d 421 (S.D.N.Y. 2013)..........................................................................7

*Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*,
    340 F.3d 79 (2d Cir. 2003)..............................................................................12, 13, 24

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 544 (S.D.N.Y. 2014).......................................................................7, 18, 20

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
    423 U.S. 232 (1976)..................................................................................................8

*Gibbons v. Malone*,
    703 F.3d 595 (2d Cir. 2013).....................................................................................7

*Gibbons v. Malone*,
    801 F. Supp. 2d 243 (S.D.N.Y. 2011) .....................................................................25

*Gryl v. Shire Pharm. Grp. PLC*,
  00-cv-9173 (HB), 2001 WL 1006628 (S.D.N.Y. Aug. 31, 2001) ..........................................12

*Gollust v. Mendell*,
  501 U.S. 115 (1991)...............................................................................................................7

*Huppe v. WPCS Int'l, Inc.*,
  670 F.3d 214 (2d. Cir. 2012).................................................................................................13

*Levner v. Prince Alwaleed*,
  61 F.3d 8 (2d Cir. 1995).........................................................................................................15

*Levy v. Southbrook Int'l Invs., Ltd.*,
  263 F.3d 10 (2d Cir. 2001)...................................................................................15, 16, 17, 24

*Litzler v. CC Invs., L.D.C.*,
  411 F. Supp. 2d 411 (S.D.N.Y. 2006)..............................................................................19, 20

*Log On America, Inc. v. Promethean Asset Mgmt. LLC.*,
  223 F. Supp. 2d 435 (S.D.N.Y. 2001)...............................................................................15, 19

*Magma Power Co. v. Dow Chem. Co.*,
  136 F.3d 316 (2d Cir. 1998)...................................................................................................7

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002)....................................................................................11

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
  898 F. Supp. 2d 673 (S.D.N.Y. 2012)....................................................................................22

*Reliance Elec. Co. v. Emerson Elec. Co.*,
  404 U.S. 418 (1972)................................................................................................................8

*Rosenberg v. XM Ventures*,
  129 F. Supp. 2d 681 (D. Del. 2001) *aff'd*, 274 F.3d 137 (3d Cir. 2001) ...............................10

*Sisak v. Wings & Wheels Exp., Inc.*,
  70-cv-2817, 1970 WL 223 (S.D.N.Y. Sept. 9, 1970) ............................................................20

*South Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009)................................................................................................. 5-6

**Statutes & Rules**

15 U.S.C. § 78m(d)(3) ......................................................................................................17, 23

iv

15 U.S.C. § 78p(a)(1).................................................................................................9

17 C.F.R. § 240.13d-3......................................................................................... passim

17 C.F.R. § 240.13d-5...................................................................................17, 18

17 C.F.R. § 240.16a-1......................................................................................... passim

17 C.F.R. § 240.16b-6.................................................................................................22

## **Other Authorities**

Peter Romeo & Alan Dye, Section 16 Treatise (2012)..................................................14

Defendant Hudson Bay Master Fund Ltd. ("Hudson Bay Fund"), by its counsel, Schulte Roth & Zabel LLP, respectfully submits this memorandum in support of its motion to dismiss the Complaint of Plaintiff Eric Greenberg (the "Complaint").

## PRELIMINARY STATEMENT

The Supreme Court rarely speaks with the clarity with which it describes Section 16(b) of the Securities Exchange Act, the so-called "short-swing profit" rule which serves as the only basis for relief sought by Plaintiff. The Supreme Court has explained that Section 16(b) is a blunt instrument whose defining feature is its "prophylactic" nature designed to combat insider trading in the context in which a company might be most vulnerable to it – short term trading by company insiders. To do this, Section 16(b) allows any shareholder of a public company to bring an action against "statutory insiders" who bought and sold stock in the company during a six month period. Defendants found to be in violation of Section 16(b) must disgorge their profits from those purchases and sales (known as short-swing profits) on a strict liability basis, even if they never obtained or misused inside information and even if they acted in good faith.

Given the sweeping nature of this draconian statute, which has the very real potential to capture benign conduct that is a far cry from insider trading, the Supreme Court has made clear that Section 16(b) must be interpreted *literally* and *mechanically*. This means that defendants who are exempt from the statute or follow the letter of the law and structure transactions to prevent achieving "statutory insider" status remain outside the scope of Section 16(b). That is exactly the case here.

Here, Plaintiff seeks to fashion a Section 16(b) case out of a handful of the defendants' publicly-filed documents, and an op-ed column posted on the internet. However, a simple review of those very same documents – which this Court may do on a motion to dismiss – reveals that Hudson Bay Fund is *not* a statutory insider as a matter of law.

*First*, as evidenced by the very filings upon which Plaintiff relies to bring this action, Hudson Bay Fund cannot be considered a statutory insider because it is not a "beneficial owner" of the common stock at issue (the "WPCS Stock"), which is a predicate to Section 16(b) liability.  Rather, non-party Hudson Bay Capital Management LP ("Capital Management"), as the investment manager of Hudson Bay Fund with voting, investment, and dispositive control over the WPCS Stock, is the beneficial owner of those securities.  And, even if Capital Management were to have been named in the Complaint, it could not be considered a statutory insider because of Section 16(b)'s exemption for "investment advisers" – an exemption which clearly applies to Capital Management.

*Second*, a review of the securities themselves reveals that they contain "blocker provisions."  Blocker provisions are tried-and-true, court-approved provisions that prevent the holder of a security from holding more than a certain percentage of the stock of a given company through conversion or exercise of the securities.  A 9.99% blocker prevents the holder from ever crossing the 10% threshold that triggers statutory insider status for purposes of Section 16(b).  Thus, even if Hudson Bay Fund – or Capital Management for that matter – were the beneficial owner of the securities at issue, the self-activating blocker provision prevented crossing of Section 16(b)'s 10% threshold.

*Third*, Plaintiff's meek attempt to allege that Hudson Bay Fund worked as a group with co-defendants also fails.  Plaintiff simply takes two publicly-filed, industry-standard documents issued by the Company, which Hudson Bay Fund and the other defendants also signed, and identifies each time those documents contain the word "agree."  Out of those benign documents and their unremarkable use of the word "agree," Plaintiff charges that Hudson Bay Fund and the other defendants acted as a group aligned to purchase and sell WPCS securities.

But, as the case law makes clear, absent other, meaningful allegations of group conduct, the Complaint fails to adequately allege that the defendants worked together as a group for Section 16(b) purposes, and even if the Complaint had made sufficient group allegations, the blocker provisions would still prevent all group members from falling within the ambit of Section 16(b).

*Fourth*, a basic requirement of any Section 16(b) complaint is that it adequately matches a set of purchases against a set of sales that took place during a six-month period. Here, the Complaint seems to allege a series of conversions and amendments that took place in October and November of 2013, which appear to be the alleged purchases serving as the basis for Plaintiff's action; however, the Complaint never adequately matches those purchases to actual sales. Instead, the Complaint generally states that sales generally occurred during a general time frame but this vagueness plainly is not enough to survive a motion to dismiss.

## STATEMENT OF FACTS

As with most Section 16 cases, the facts are simple (notwithstanding the many irrelevant details pleaded by Plaintiff in his Complaint): Plaintiff Eric Greenberg is a stockholder in WPCS International Inc. ("WPCS"), a Delaware corporation based in Pennsylvania that provides communications, infrastructure and contracting services to companies operating in various industries worldwide. Compl. ¶ 11. Defendant Hudson Bay Fund is a Cayman Island entity that held WPCS Stock. *Id.* ¶¶ 5, 48. This stock is managed by non-party Capital Management, a Delaware-incorporated, New York-based investment manager. *Id.* ¶ 44.

### A.  Hudson Bay Fund's Alleged Purchase and Sale of WPCS Stock.

The Complaint alleges that on December 4, 2012, Hudson Bay Fund, along with other defendant investors ("Other Defendant Investors," and, together with Hudson Bay Fund,

the "Defendants"),[1] entered into a Securities Purchase Agreement ("SPA") with WPCS, in which

Hudson Bay Fund obtained $1,357,500 in notes (the "Notes") and warrants (the "Warrants") to

purchase an additional 5,404,061 shares of the WPCS's common stock in exchange for providing

WPCS $1,357,500. *Id.* ¶¶ 13-14. At the time of this purchase, WPCS and Hudson Bay Fund, as

well as the Other Defendant Investors, also executed a registration rights agreement ("Rights

Agreement").

Both the Notes and Warrants are securities instruments that may, under certain

circumstances and subject to certain provisions, be converted or exercised to obtain WPCS

Stock. *Id.* ¶ 16. However, as alleged in the Complaint, the Warrants contain a "blocker"

provision that prevents Hudson Bay Fund (as well as the Other Defendant Investors ) from

exercising the Warrants if, following exercise, Hudson Bay Fund would beneficially own any

amount of WPCS Stock greater than 9.99%. *Id.* ¶ 43. The Notes issued by WPCS include a

blocker provision that is identical in all material respects (referred to together with the blocker

provision in the Warrants as the "Blocker Provisions"). Therefore, by the express terms of the

Warrants and Notes, Hudson Bay Fund could not obtain in excess of 9.99% of WPCS stock,

absent obtaining WPCS stock in the market, which is not alleged. Though there were several

subsequent amendments to the structure of the Notes and Warrants, the language and effect of

the Blocker Provisions were never modified.

The Complaint alleges that on October 25, 2013, Hudson Bay Fund and the Other

Investor Defendants exercised some of the Warrants into common stock. *Id.* ¶ 48. The

Complaint further alleges that "during the three months ending January 31, 2014," Hudson Bay

---

[1] The other defendants in this action are Iroquois Master Fund Ltd. ("Iroquois") and American Capital Management
LLC.

Fund and the Other Investor Defendants converted the Notes into "over 13,000,000 shares of [WPCS] Common Stock." *Id.* ¶ 52. [2] In summary fashion, the Complaint then states that "Within six months of the aforementioned purchase of Common Stock, Defendants sold over 13 million shares of Common Stock for a profit of millions of dollars." *Id.* ¶ 52.

**B.     The BTX Transaction.**

Irrelevant to the questions of whether Defendants were statutory insiders purchasing and selling WPCS Stock in a six-month period, the Complaint contains a vignette regarding a December 2013 transaction between WPCS and the Defendants (the "BTX Transaction"). *Id.* ¶¶ 26-40. The Complaint alleges that, on December 17, 2013, WPCS acquired BTX Trader, LLC, a Bitcoin start-up, from the Defendants. *Id.* ¶¶ 27, 31. Plaintiff draws certain allegations from an article from TheStreet.com, which characterizes the transaction as a "cynical ploy [by Defendants] to take advantage of the Bitcoin frenzy to create some excitement around the stock so the funds could get out from under a troubled loan." *Id.* ¶ 36. No Section 16(b) purchase or sale is alleged to have occurred in connection with the BTX Transaction.

<u>ARGUMENT</u>

**I.     STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *South Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 104 (2d Cir. 2009) (courts are to

---

[2] For reasons noted herein, the conversion of the Notes alleged at Compl. ¶ 52 cannot be considered a "purchase" for the purposes of Section 16(b). *See infra* Note 14.

"assum[e] all 'well-pleaded factual allegations' to be true, and 'determin[e] whether they plausibly give rise to an entitlement to relief'").  Those "well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (internal citations omitted).  Rather, they must "show" that the pleader is entitled to relief.  *Id.*  If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

On a motion to dismiss, a court may properly consider documents attached to or referenced in a complaint.  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (explaining that "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion" into a motion for summary judgment "under Rule 56 is largely dissipated") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991)); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010).  Here, the Court should consider the SPA (Compl. ¶ 13), the Rights Agreement (*id.*), the Notes (*id.*), the Warrants (*id.*), and the February 7, 2013 Schedule 13G (*id.* at 44), all referenced in and relied upon by Plaintiff in the Complaint.  These documents are attached as exhibits to the September 24, 2014 Declaration of Michael E. Swartz (hereinafter "Swartz Decl.").

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 16(b)

Plaintiff brings this action under Section 16(b) of the Securities and Exchange Act and seeks disgorgement by Hudson Bay Fund for its alleged purchases and sales of WPCS Stock.  To state a claim for disgorgement of short-swing profits under Section 16(b), a plaintiff must allege: "(1) a non-exempt purchase and subsequent non-exempt sale (or a non-exempt sale and subsequent non-exempt purchase) of a class of an issuer's equity securities (2) within a six-

month period (3) by a statutory insider." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014) (internal citations omitted).

Courts routinely dismiss Section 16(b) claims on a Rule 12(b)(6) motion. *See, e.g.*, *id.*; *Bennigson v. Huntsman*, 13-cv-452 (KBF), 2013 WL 5348461 (S.D.N.Y. Sept. 24, 2013); *Donoghue v. Murdock*, 13-cv-1224 (PAE), 2013 WL 4007565 (S.D.N.Y. Aug. 6, 2013); *Donoghue v. Patterson Companies, Inc.*, 990 F. Supp. 2d 421 (S.D.N.Y. 2013). Although Plaintiff undoubtedly will suggest that little is required of a Section 16(b) plaintiff to survive a motion to dismiss, those recent examples, and a host of other cases cited throughout, demonstrate that Courts – particularly in this Circuit – take a hard look at Section 16(b) cases at the 12(b)(6) stage to weed out the implausible from the plausible. And, based on the documents cited by the Complaint itself, this case is one of the implausible ones.

### A.    Section 16(b) Is Literally and Mechanically Construed.

Section 16(b)'s defining feature is its prophylactic nature. It covers *all* non-exempt purchases and sales by a statutory insider during a six-month period on a strict liability basis. However, "[b]ecause Section 16(b) provides for strict liability, the Supreme Court has expressed a reluctance to exceed a literal, mechanical application of the statute." *Bennigson v. Huntsman*, 13-cv-452 (KBF), 2013 WL 5348461, at 5* (S.D.N.Y. Sept. 24, 2013) (citing *Gollust v. Mendell,* 501 U.S. 115, 122 (1991)).

Section 16(b) is designed to be "capable of easy administration" and "to create rules that can be mechanically applied." *Gibbons v. Malone*, 703 F.3d 595, 603 (2d Cir. 2013) (internal citations omitted). By requiring statutory insiders to disgorge short-swing profits even if they did not trade on inside information or intend to profit on the basis of such information, Section 16(b) operates as a "blunt instrument." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321 (2d Cir. 1998). The Supreme Court has emphasized that this strict-liability regime must

be confined within "narrowly drawn limits." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 251 (1976). As such, the Supreme Court, more than once, has rejected claims that were within the "spirit" of Section 16(b) but not within its "prophylactic" letter. *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972) (declining to find an investor liable for sales made after that investor was no longer a 10% owner, but within six months of him having been so); *Provident,* 423 U.S. 232 (1976) (declining to extend liability to a short-swing sale where it was the initial purchase that rendered the investor a 10% owner).

In fact, the Supreme Court has explicitly held that, through Section 16(b), "Congress did not reach every transaction in which an investor relies on inside information." *Reliance*, 404 U.S. at 422. "If proof exists that an individual actually *has* abused inside information, investors have access to other, less mechanical, remedies." *Provident*, 423 U.S. at 255 ("These [other] sanctions alleviate concern that ordinary investors are unprotected against actual abuses of inside information in transactions not covered by § 16(b).").

Crucially, the strict liability of Section 16(b) has led investors to structure their transactions so as to avoid running afoul of its prohibitions. *Reliance*, 404 U.S. at 422. For example, investors frequently include "blocker provisions" in securities instruments specifically to avoid liability under Section 16(b). Those provisions have been judicially-endorsed. *See infra* at II(B)(2). Indeed, the Supreme Court has held that "[l]iability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b). The question is, rather, whether the method used to 'avoid' liability is one permitted by the statute." *See id.* Additionally, in order to curtail Section 16(b)'s overbroad sweep, the Rules attendant to Section 16 contemplate circumstances under which investors can separate themselves from control of their investments and provides express statutory exemptions for

certain entities, such as investment advisers, that commonly hold securities for the benefit of others. *See* 17 C.F.R. § 240.16a-1(a)(1)(i)-(xi).

### B. Hudson Bay Fund Is Not a "Statutory Insider" as a Matter of Law.

Section 16(b) applies only to "statutory insiders":  a company's directors, officers, or a "beneficial owner of more than 10 percent of any class of" the securities at issue.  15 U.S.C. § 78p(a)(1).  Because Hudson Bay Fund is not a director or officer of WPCS, Plaintiff must adequately allege that Hudson Bay Fund is a "beneficial owner" of more than 10% of WPCS's stock.  Rule 16a-1 defines "beneficial owner" for purpose of calculating 10% ownership as the term is used in Section 13(d) of the Securities Exchange Act and the rules thereunder.[3]  *See* 17 C.F.R. § 240.16a-1.  In turn, Rule 13d-3 defines "beneficial owner" as "any person who, directly or indirectly . . . has or shares [] [v]oting power which includes the power to vote, or to direct the voting of, such security; and/or, [] [i]nvestment power which includes the power to dispose, or to direct the disposition of, such security." *See* 17 C.F.R. § 240.13d-3.  Rule 13d-3 further states that a person shall be deemed a beneficial owner of a security if that person has the right to acquire beneficial ownership of that security within 60 days.  *See* 17 C.F.R. § 240.13d-3(d)(1).

As set forth below, Hudson Bay Fund is not a beneficial owner of the WPCS Stock and thus is not a statutory insider under Section 16(b) because (a) Capital Management, not Hudson Bay Fund, maintains voting, investment, and dispositive power over the WPCS Stock; (b) the Blocker Provisions in the securities themselves prevent any holder from becoming a beneficial owner of more than 10% of the WPCS Stock; and (c) Hudson Bay Fund cannot be combined into a "group" with the Other Investor Defendants based on the facts alleged in the

---

[3] Section 16 employs two definitions for beneficial owner:  one definition for calculating ten percent ownership, which is set forth in Rule 16a-1(a)(1), 17 C.F.R. § 240.16a-1(a)(1), and a separate definition for all other purposes (including disgorgement liability), which is provided by Rule 16a-1(a)(2), 17 C.F.R. § 240.16a-1(a)(2).  A person must be a beneficial owner under both definitions for Section 16(b) liability to arise.

Complaint. All this is clear simply from the documents referenced in the Complaint, requiring

its dismissal. *See Rosenberg v. XM Ventures*, 129 F. Supp. 2d 681, 683 (D. Del. 2001) *aff'd*, 274

F.3d 137 (3d Cir. 2001) (dismissing Section 16(b) case after determining that defendant was not

a beneficial owner of securities based on documents relied upon in the complaint).

1.  **Capital Management, Not Hudson Bay Fund, Controls the WPCS Stock at Issue.**

Hudson Bay Fund is not the beneficial owner of the WPCS Stock because, as

evidenced by documents referenced in the Complaint, Capital Management, a separate entity,

maintains voting, investment, and dispositive power over the Stock, not Hudson Bay Fund.

(a)  **A Schedule 13G referenced in the Complaint flatly contradicts Plaintiff's assertions that Hudson Bay Fund is a beneficial owner of the WPCS Stock.**

Paragraph 44 of the Complaint references a Schedule 13G, filed on February 7,

2013 (the "Schedule 13G"), presumably as evidence of Hudson Bay Fund's beneficial ownership

of the WPCS Stock. However, the Schedule 13G was filed by a *separate entity*, Capital

Management. *See* Swartz Decl. Ex. A. An examination of that schedule reveals the following:

- "Hudson Bay Capital Management, L.P" – not Hudson Bay Fund – is the reporting person.

- The Schedule 13G concerns the Notes and Warrants issued by WPCS.

- Capital Management maintains "beneficial ownership" over the Notes and Warrants.[4]

Thus, based on a document referenced in the Complaint, Capital Management, not

Hudson Bay Fund, is the beneficial owner of the WPCS Stock. Courts in this district routinely

---

[4] As noted, Rule 16a refers to Rule 13d for its definition of beneficial ownership. Pursuant to Rule 13d, Capital Management was required to file a Schedule 13G reporting its beneficial ownership over the Notes and the Warrants. Notwithstanding this filing, as discussed herein, Rule 16a specifically exempts investment advisers like Capital Management from the reach of Section 16(b). *See supra* II(B)(1)(b).

have held that when an allegation in a complaint is flatly contradicted by the language of a document referenced in the complaint, the referenced document prevails. *See, e.g.*, *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002). Therefore, the Complaint fails to adequately allege that Hudson Bay Fund is a beneficial owner.

In fact, the Complaint fails to allege *any* connection at all between Hudson Bay and Capital Management. Despite referencing a document that clearly shows that Capital Management is the beneficial owner of the securities in question, Plaintiff failed to name Capital Management as a party in the Complaint. Plaintiff cannot treat those two entities as the same entity simply because they both contain the words "Hudson Bay" in their names.

The Complaint is required to provide some account of how Capital Management's voting, investment, and dispositive control over the WPCS Stock can confer beneficial ownership to Hudson Bay Fund. It does not do so, and thus should be dismissed.

> **(b)** **As an Investment Adviser, Capital Management is exempt from Section 16(b)'s reach.**

Even if Plaintiff had brought this case against Capital Management, rather than Hudson Bay Fund, and alleged that Capital Management was the beneficial owner of the WPCS Stock, it would still fail. That is because Section 16 contains various exemptions to its definition of beneficial ownership, one of which is a specific exemption for any registered "investment adviser" that would otherwise be considered a beneficial owner. *See* 17 C.F.R. § 240.16a-1(a)(1)(v).[5] For the reasons set forth below, Capital Management is such an investment adviser,

---

[5] Rule 16a-1(a) provides, in relevant part, as follows: "… the following institutions or persons shall not be deemed the beneficial owner of securities of such class held for the benefit of third parties …as long as such shares are acquired by such institutions or persons without the purpose or effect of changing or influencing control of the issuer…(v) [a]ny person registered as an investment adviser under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3) or under the laws of any state." 17 C.F.R. § 240.16a-1(a)(1).

and thus, even if the Complaint were to assert a claim against Capital Management, it would fail on the basis of the investment adviser exemption.[6]

Capital Management's status as an investment adviser is clear from the documents referenced in the Complaint.  The Schedule 13G specifically shows that Capital Management is a registered investment adviser that holds the WPCS Stock for its advisory client.  *See* Swartz Decl. Ex. A, Item 3(e).  Therefore, Capital Management cannot be considered a "beneficial owner" under Section 16(b), unless it was attempting to change or influence the control of the issuer.  It was not.  Not only has Plaintiff not alleged the requisite attempt to change or influence control, but the Schedule 13G certifies that Capital Management holds the WPCS Stock without the purpose or effect of changing the control of WPCS.  *See id.*, Item 10.

Indeed, the Second Circuit has confirmed that, where securities held by an investment adviser are acquired without the purpose of influencing control of the issuer, the "literal terms" of Rule 16a-1(a)(1)(v) dictate that the investment adviser is not a beneficial owner of such shares.  *See Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 340 F.3d 79, 83 (2d Cir. 2003).  Therefore, Capital Management is exempt from Section 16(b) liability, and amending the Complaint to include Capital Management would not save Plaintiff's claim.

In *Egghead.com*, the Second Circuit clearly articulated the policy reasons underlying this exemption.  The Court noted that the institutions covered by the exemption "conventionally hold large quantities of shares for the benefit of others."  *Id.* at 84.  By adopting this exemption, the SEC acknowledged that "the listed institutions, which in the ordinary course of their business manage customer and fiduciary accounts" would be unfairly subject to Section

---

[6] *See Gryl v. Shire Pharm. Grp. PLC*, 00-cv-9173 (HB), 2001 WL 1006628 (S.D.N.Y. Aug. 31, 2001) *aff'd sub nom.* 298 F.3d 136 (2d Cir. 2002) (dismissing Section 16(b) case on the basis that defendant's alleged conduct fell into exemptions).

16(b) liability "if they exercised either their voting or investment power over accounts that when aggregated held over ten percent of a class of equity securities." *Id.* The exemptions were "necessary to avoid undue interference with the day-to-day business of banks, brokers, dealers, investment advisers and other specified institutional fiduciaries and custodians." *Id.*

In short, Hudson Bay Fund does not have voting, investment, or dispositive authority over the WPCS Stock. Rather, control of the WPCS Stock lies with Capital Management, a non-party to this action. Hudson Bay thus does not satisfy the "literal, mechanical" requirements of the statute. To the extent Plaintiff's claims are based on the shares controlled by Capital Management, those claims also must fail. As neither Hudson Bay nor Capital Management meet the definition of beneficial owner, they are not subject to Section 16 and thus cannot be liable for disgorgement of short-swing profits pursuant to that Section.[7]

### 2. Hudson Bay Fund Never Had the Right to Acquire More than Ten Percent of WPCS Common Stock.

Even if Hudson Bay Fund maintained voting, investment, and dispositive power over the WPCS Stock, it still could not have been a beneficial owner for purposes of Section 16 because the Notes and Warrants convertible and exercisable into the WPCS Stock contained the

---

[7] While the Second Circuit has found examples of ineffective delegation of voting and investment authority to investment advisers, it did so under circumstances that are not analogous to the present matter. *See Huppe v. WPCS Int'l, Inc.*, 670 F.3d 214 (2d. Cir. 2012); *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012). *Huppe* and *Tonga* represented attempts by limited partners to shield themselves from the actions of their general partner, who was clearly an agent of the partnership as a whole. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 51 (2d Cir. 2012) (interpreting both holdings). However, unlike *Huppe* and *Tonga*, Plaintiff does not – and cannot – allege that Capital Management was a general partner of Hudson Bay Fund. That Capital Management was *not* a general partner of Hudson Bay Fund is evidenced by Schedule D to Capital Management's Form ADV, which was filed with the SEC and is a matter of public record of which the Court may take judicial notice. *See* Swartz Decl. Ex. I at 42-43. Schedule D required Capital Management to list the "Name(s) of General Partner, Manager, Trustee, or Directors (or persons serving in a similar capacity)" for Hudson Bay Master Fund. In response, three individual directors are listed; Capital Management is *not* identified on that schedule as a general partner of Hudson Bay Fund. Therefore, the general partner/limited partner relationship present in *Huppe* and *Tonga* is absent here. Moreover, Plaintiff makes no allegation whatsoever regarding any relationship between Capital Management and Hudson Bay Fund that otherwise would allow it to rely upon *Huppe* or *Tonga*.

Blocker Provisions that automatically prevented Hudson Bay Fund from becoming a beneficial

owner of more than 9.99% of WPCS. Once again, this is evident from the documents referenced

in the Complaint. The two relevant documents here are the Notes and the Warrants, of which all

Defendants held identical versions.

> The Warrant blocker provision reads:

> Notwithstanding anything to the contrary contained in this Warrant, this Warrant
> shall not be exercisable by the Holder hereof to the extent (but only to the extent)
> that after giving effect to such exercise the Holder (together with any of its
> affiliates) would beneficially own in excess of 9.99% (the "Maximum
> Percentage") of the Common Stock . . .

Swartz Decl., Ex. B at 5. The blocker provision in the Notes is identical to the one contained in

the Warrants in all material respects. Swartz Decl., Ex. C at 5. The existence of the Blocker

Provisions is also noted in the Schedule 13G.[8]

Such blocker provisions, also known as conversion caps, are not uncommon.

They exist to signal to the market that the major investors in a given company cannot acquire

more than 10% of that company. To accomplish this, they function just as the name suggests:

they provide conditions within the security instrument that prohibit the holder of the security

from exercising conversion rights if, by such action, the holder would exceed a given threshold

(often 5% or 10%). *See* Romeo & Dye, *Section 16 Treatise*, 170 (2012).

Crucially, a 10% blocker provision prevents the holder of a security from ever

possessing the "right to acquire" a sufficient amount of that security to render it a beneficial

owner subject to Section 16(b). Likewise, it prevents the issuer of that security (WPCS in this

case) from honoring any attempt by the holder to convert or exercise that security into an amount

---

[8] "Pursuant to the terms of the [Notes and Warrants], [Capital Management] cannot convert or exercise, as
applicable, any of the Reported Securities if the Reporting Persons would beneficially own, after any such
conversion or exercise, more than 9.99% of the outstanding shares of Common Stock." Swartz Ex. A, Item 4.

of stock greater than 10% of the issuer's outstanding stock.  It thus is a mechanical, straight-forward way for those holding convertible instruments to avoid the reach of Section 16(b).  And, in the mechanical, straight-forward conceptual world of Section 16(b), when Courts find blocker provisions in place, they grant motions to dismiss the complaints.  *See, e.g.*, *Log On America, Inc. v. Promethean Asset Mgmt. LLC.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001) ("[T]he Court finds that the conversion cap in the Certificate of Designations is clearly written and enforceable as a matter of law."); *see also Levner v. Prince Alwaleed,* 61 F.3d 8, 9 (2d Cir. 1995).

In fact, in a leading case on blocker provisions, the Second Circuit held that Section 16(b) did not reach a defendant applying a blocker provision similar to those at issue here.[9]  In *Levy v. Southbrook International Investments, Ltd.*, the defendant was the owner of convertible securities which, absent a blocker provision, could have been converted into more than 10% of the issuer's outstanding common stock.  263 F.3d 10, 11 (2d Cir. 2001).  However, the convertible securities were subject to a blocker provision which prevented the defendant from converting the shares to the extent that such conversion would result in it owning more than 4.9% of the outstanding common stock of the issuer.  *See id* at 12.  The defendant proceeded to convert and sell its shares *seriatum*:  converting an amount of shares under the blocker provision, selling those shares, and repeating the process.  *See id*.  The plaintiff in *Levy* argued that this conduct demonstrated that the defendant was a beneficial owner of more than 10% of the outstanding common stock.  *See id*.

---

[9] The blocker provision in *Levy* reads:  "*Purchaser Ownership of Common Stock.* The Purchaser may not use its ability to convert Shares hereunder or under the terms of the Vote Certificates or to exercise its right to acquire shares of common stock under the Warrants to the extent that such conversion or exercise would result in the Purchaser owning more than 4.9% of the outstanding shares of the Common Stock."  *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 (2d Cir. 2001).

The Second Circuit rejected plaintiff's argument, holding that "beneficial ownership is determined at any one time, not cumulatively" and that an investor cannot be the beneficial owner of more stock than a blocker provision allows because "it does not have the 'right to acquire' more than [the provisioned amount]." *See id*. at 16. The Second Circuit heavily cited an amicus brief submitted by the SEC on this topic. *See id*. In that brief, the SEC argued that:

> [W]hile an argument can be made that [the defendant] could have access to inside information by virtue of its power to dispose of stock, that is not enough to bring it under Section 16…If the conversion cap in this case is binding, [the defendant] is not, by virtue of holding convertible securities, a beneficial owner of more than 10% of [the issuer's] common stock, and thus is not subject to Section 16.

Brief of the S.E.C., Amicus Curiae, in Support of Appellee at 24, Levy v. Southbrook International Investments, Ltd., No. 00-7630 (2d Cir. March 23, 2001), (Swartz Decl., Ex. J).

The Second Circuit, "[v]iewing Rule 13d-3(d)(1)(i) in the context of its purpose, and operation," found the SEC's interpretation of the limitation on defendants' "right to acquire" persuasive. *See Levy*, 263 F.3d at 16. Thus, it held, beneficial ownership is subject both to Section 16(b)'s "narrowly drawn limits" and to the conversion caps. *See id*.

*Levy* and its progeny compel dismissal of the Complaint. The Blocker Provisions should be given their full legal effect. In fact, Plaintiff acknowledged the existence of the Blocker Provisions in the Complaint, but then – like the plaintiff in *Levy* – inexplicably calculated the total number of shares held by Hudson Bay Fund as if the Blocker Provisions *were not present*. Plaintiff alleges that "the 5,404,061 warrant shares indicate the number of shares of Common Stock that would be issuable upon full exercise of such reported securities and do not give effect to such blocker." Compl. ¶ 45. However, an investor's "right to acquire" common stock "is at all times subject to the [blocker provision]." *Levy*, 263 F.3d at 15. Thus, the "full exercise" of the security is the amount allowed by the Blocker Provisions. And, even if Hudson

Bay Fund were to exercise its conversion rights *seriatum* (as Plaintiff seems to imply at Compl. ¶ 52), such conduct would not run afoul of the Blocker Provisions, damage their validity, or bring Hudson Bay Fund within the scope of 10% beneficial ownership.  *See Levy* at 15-16.[10]

The Notes and Warrants held by Hudson Bay Fund were, at all times, subject to the binding Blocker Provisions that denied Hudson Bay Fund the right to acquire beneficial ownership of more than 10% of the underlying equity securities of WPCS.[11]  Hudson Bay Fund did not acquire more than 10% of WPCS common stock and never had the right to do so. Therefore, Hudson Bay Fund is not a beneficial owner of more than 10% of any class of WPCS equity securities and is not subject to Section 16(b) disgorgement.

### 3.    Hudson Bay Fund Was Not a Member of a "Group" Pursuant to Sections 13 and 16.

In certain circumstances, defendants in a Section 16(b) case may be considered together as a "group," in which case a court may aggregate the shares held by all members of the group in order to pass the 10% threshold.  Section 13(d)(3) of the Securities Exchange Act considers a group of investors to be a single owner for purposes of Section 16(b) "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer." 15 U.S.C. § 78m(d)(3).  To establish the existence of such a group, there must be evidence of an agreement to achieve a common purpose with regard to the issuer's securities.  *See* 17 C.F.R. § 240.13d-5(b)(1).

---

[10] Plaintiff nowhere alleges that Hudson Bay Fund violated the Blocker Provisions, nor offers facts or claims that would indicate that the Blocker Provisions should not be enforced as written.

[11] The Blocker Provisions also applies to Hudson Bay Fund's affiliates, including Capital Management.  Thus, even if Plaintiff had brought this action against Capital Management and even if Capital Management were not exempted by the investment adviser exemption, the Blocker Provisions would also have prevented Capital Management from becoming a beneficial owner of the WPCS Stock.

To survive a motion to dismiss on this theory, a complaint must adequately allege that defendants agreed to act together for the purpose of acquiring, holding, voting or disposing of the securities in question. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 551 (S.D.N.Y. 2014). Courts routinely dismiss Section 16(b) claims that purport to advance a "group" theory when they fail to adequately plead facts supporting the existence of a group. *See id.*; *Donaghue v. Accenture Ltd.*, 03-cv-8329 (NRB), 2004 WL 1823448 (S.D.N.Y. Aug. 16, 2004).

      (a)      **Plaintiff's recitation of administrative terms from the SPA and Rights Agreement is insufficient to allege group activity.**

Plaintiff has failed to adequately plead the existence of a group. All Plaintiff does is take two publicly available, industry-standard documents, the SPA and the Rights Agreement, and identify places in those documents where the parties to those agreements have "agreed" to do routine things not indicative of group activity. *See* Compl. ¶¶ 17-24. This is a superficial and fundamentally insufficient approach to meeting the basic pleading standards required of a Section 16(b) plaintiff. Not all common activity is group conduct and, indeed, Rule 13d specifically exempts from the definition of "group conduct" concerted actions relating to the purchase of securities directly from the issuer by enumerated types of institutions.[12]

*None* of the "agreements" that Plaintiff identifies in paragraphs 17-24 of the Complaint actually evidences a common plan for acquiring, holding, voting or disposing of the WPCS Stock. Rather, the individual terms plucked out of the SPA and the Rights Agreement are

---

[12] For example, the "Direct from Issuer Exemption," 17 C.F.R. § 240.13d-5(b)(2), creates a specific exemption from "group conduct" for enumerated entities who act together for the purpose of buying securities directly form an issuer – exactly the conduct that is alleged to have occurred here. The thrust of the Complaint is that Iroquois and Hudson Bay Fund allegedly acted together to purchase securities directly from WPCS in a private offering. The Direct from Issuer Exemption would have applied here but for the happenstance that the alleged group contains non-registered purchasers who are not enumerated as being covered.

essentially administrative in nature.  All they evidence is that Hudson Bay Fund and the Other Investor Defendants made similar investments at the same time with WPCS.  And courts have held that mere allegations of parallel investments among investors is not sufficient.  *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449 (S.D.N.Y. 2001).  As "[p]rivate offerings of securities generally involve common purchase agreements with subscribers," the simple existence of the SPA and the Rights Agreement is not sufficient to indicate the existence of a "group" pursuant to Sections 13 and 16 of the Exchange Act.  *Litzler v. CC Invs., L.D.C.*, 411 F. Supp. 2d 411, 415-16 (S.D.N.Y. 2006).

*Litzler* is particularly instructive.  There, the plaintiff alleged the existence of a group of shareholders that beneficially owned more than 10% of the issuer's common stock.  *See id.* at 414.  The defendants all had entered into a common securities purchase agreement with the issuer as well as other agreements with the issuer.  *See id*. at 412-413.  All the defendants then purchased convertible securities pursuant to that agreement.  *See id*.  After the initial purchase, the defendants, at various times, exercised their conversion rights and sold-off the underlying common stock within six months of having purchased that stock.  *See id* at 413.  The plaintiff further alleged that the defendants entered into their securities purchase agreement through the use of a common lawyer.  *See id.* at 415.  The plaintiff argued that those "coordinated activities of purchase" constituted "group activity" pursuant to Section 16.  *See id*.

The court disagreed with the plaintiff and granted summary judgment for the defendants, noting that "the circumstances of private placement *require* a single set of documents equally affecting all investors."  *See id*. (emphasis added).  The court held that the existence of a common purchase agreement negotiated on behalf of all the defendants by a single lawyer

indicated "nothing more than the use of a lead draftsman." *See id*. at 416.  The court also found informative the fact that the issuer did not consider the defendants a group.  *See id.*

Similarly, the SPA and Rights Agreement are common documents that the Defendants agreed to in their individual capacities, and "[m]ore than such cooperative activity has to be alleged and proved to show that the investors were motived by a desire to affect control, or by some other indicia of concerted activity." *Id.* at 415.  These industry-standard documents are fundamentally agreements between each purchaser (each of the Defendants) and the issuer (WPCS), not agreements between or among purchasers in any substantive way. WPCS was not executing a common plan in conjunction with the Defendants beyond the execution of a private offering – and each Defendant was simply a buying into that offering. *See Sisak v. Wings & Wheels Exp., Inc.,* 70-cv-2817, 1970 WL 223, at *6 (S.D.N.Y. Sept. 9, 1970) (purchaser and buyer on opposite sides of a transaction cannot constitute a "group" for purposes of Rule 13d); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 553 (S.D.N.Y. 2014) (entities participating in offering do not constitute a group simply by having a common agreement to facilitate that offering).

Furthermore, the documents themselves – to which the Company is a party – disclaim any intent to form a group:

> Nothing contained herein or in any other Transaction Document, and no action taken by any Buyer pursuant hereto or thereto, shall be deemed to constitute the Buyers as, and the Company acknowledges that the Buyers do not so constitute, a partnership, an association, a joint venture or any other kind of group or entity, or create a presumption that the Buyers are in any way acting in concert or as a group or entity…

SPA, Swartz Decl. Ex. D, p. 44.  Just as the issuer in *Litzler*, WPCS did not consider Defendants to be members of a group at the time in which the parties entered into the SPA.

The existence of these common agreements surrounding the private placement of WPCS Stock is clearly insufficient to sustain a claim of the existence of a group. Excluding the references to the SPA and Rights Agreements, Plaintiff makes no allegations of group activity between Hudson Bay and the other Defendants concerning the actual purchase or sale of any shares. Given that, the Complaint must be dismissed.

(b)     **The BTX Transaction does not support the plausible inference of group activity.**

Plaintiff's only attempt at providing any example of actual group conduct is a description of the WPCS acquisition of BTX Trader, LLC, which simply does not support his Section 16(b) claims because it does not in any way evidence an agreement relating to the holding, voting, sale or purchase of a security, nor does it constitute a purchase or sale for Section 16(b) purposes. Compl. ¶¶ 26-41. Plaintiff alleges that the BTX Transaction was the initiation of a joint plan from the Defendants to increase the trading volume of WPCS, but it does not allege any agreement relating to the holding, voting, sale or purchase of a security – the elements required to demonstrate group activity. *See id*. Plaintiff's only support for this assertion rests on the opinion of Dan Freed, a writer for TheStreet.com. *See id.* ¶ 36. Mr. Freed states that the BTX Transaction "at worst, looked like a cynical ploy by a pair of hedge funds to take advantage of the Bitcoin frenzy to create some excitement around the stock so the funds could get out from under a troubled loan." *Id.* While all inferences must be drawn in favor of the non-moving party, allegations made at the "speculative level," whether offered by the Plaintiff or Mr. Freed, are not sufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. The Court should not give credence to this speculative article from the TheStreet.com:

*First*, the BTX Transaction is simply irrelevant to the claims at issue.  The transaction in no way involves any agreement relating to the holding, voting, sale or purchase of a security, nor does it involve a purchase or sale of WPCS Stock for purposes of Section 16(b).

*Second,* to the extent that inclusion of the BTX Transaction is designed to allege some form of "group conduct" so as to aggregate Hudson Bay Fund and the Other Investor Defendants' actual purchases and sales of the WPCS Stock, its inclusion is entirely unpersuasive. This alleged group conduct took place in December 2013, *after* the only alleged non-exempt purchases of WPCS Stock in October 2013.[13]  For the sake of argument, even if the BTX Transaction constituted group activity for purposes of Section 16(b), and thus aggregated Defendants' shares together, Defendants would only become "statutory insiders" at the time of this conduct in December 2013 (and then only assuming the Blocker Provisions did not exist). Plaintiff has alleged no post-October 2013 activity that could constitute a "purchase" for the purposes of Section 16(b), as the alleged conversion of the Notes referenced in paragraph 52 of the Complaint are exempt from Section 16(b).[14]

The case law is explicit that for Section 16(b) liability to attach, a defendant must be a statutory insider *at the time of the relevant stock purchase*, which in this case, is alleged to have been October 2013.  *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 694 (S.D.N.Y. 2012) *aff'd*, 548 F. App'x 16 (2d Cir. 2013).  Therefore, the December 2013 BTX Transaction would not render any purchases made by Defendants in

---

[13] Even if the subsequent November 5, 2013 amendment were alleged to be a Section 16(b) purchase, the BTX Transaction took place after that as well.

[14] *See* Forms 8-K filed by WPCS on Dec. 17, 2013 and Dec. 27, 2013, both referenced in the Complaint at paragraph 56; *see also* Form 8-K filed by WPCS on Jan. 13, 2014, of which this Court may take judicial notice as a public document.  *See* Swartz Exs. F, G, and H.  Such conversions are exempt from Section 16(b) under 17 C.F.R. § 240.16b-6(b).

October 2013 (as alleged) subject to Section 16(b) (even taking into account the amendment in November 2013).

      *Third*, this story, based on the conjecture of a writer at TheStreet.com, is designed to suggest to the Court that there is in fact some degree of "wrongdoing" present in these facts. There was not. And, as Plaintiff and his attorney well-know, evidence of scienter, even if present, is irrelevant to a Section 16(b) claim.

      **(c)    Even if Hudson Bay Fund and the Other Investor Defendants had formed a group, the Blocker Provisions would still prevent any member of the group from becoming a beneficial owner.**

      Even if Plaintiff *had* pled sufficient facts to support the existence of a group, Plaintiff's claim would still fail in the face of the Blocker Provisions, as well as the investment adviser exemption.

      As Plaintiff notes, if Hudson Bay had been a member of a group with the Other Investor Defendants, the group would be deemed to be the beneficial owner of the WPCS Stock owned by all the members of the group. Compl. ¶ 2. Section 13(d)(3) of the Securities Act considers a group of investors to be a single "owner" for purposes of Section 16(b). *See* 15 U.S.C. §78m(d)(3). A group "shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons" comprising the group. *See* 17 C.F.R. § 240.13d-5(b)(1). Simply put, for Section 16(b) purposes, the beneficial ownership of a hypothetical group would have been the total amount of the WPCS Stock that the group would have had a right to acquire within 60 days. *See supra*, p. 9.

      *First*, Plaintiff's conclusory allegations as to the holdings of this alleged group, as set forth in paragraphs 42 through 46 of the Complaint, make no sense. There, Plaintiff discusses the February 2013 holdings of only two parties: Iroquois and Capital Management

(which is not a named defendant).  *See id*.  After stating the alleged holdings of only those two

entities (and ignoring the Blocker Provisions), Plaintiff summarily concludes the following:

> [T]the aggregate holdings of two group members alone, Hudson Bay and Iroquois
> are enough to place each Defendant as a member of a group with all other
> Defendants above the 10% threshold required by Section 16(b) and subjects each
> such group member (*i.e.*, all Defendants) to Section 16(b) liability.

*Id*. ¶ 46.  However, the holdings described in the paragraphs immediately preceding that passage

do not reference Hudson Bay Fund, but rather the holdings of Capital Management.  *Id.* ¶¶ 44-

45.  As explained in detail above, Capital Management is a registered investment adviser, subject

to exemption, and therefore cannot be found to be a beneficial owner under Section 16(b).  *See*

*supra* II(B)(1)(b).  Consequently, any shares owned by Capital Management *cannot be included*

in the securities beneficially owned by the alleged group.  *See Egghead.com, Inc. v. Brookhaven*

*Capital Mgmt. Co.*, 340 F.3d 79, 85-86 (2d Cir. 2003) (holding that securities held by an

investment adviser do not count towards the beneficial ownership of a group).

     *Second*, even assuming the exemption does not apply and including Capital

Management within the hypothetical group, this group's "right to acquire" the underlying WPCS

Stock would have been dependent on the terms of the Notes and Warrants.  All Defendants held

the same Notes and Warrants, and those Notes and Warrants all contain the Blocker Provisions

referenced by documents cited in the Complaint and described in detail above.

     An investor's "right to acquire" common stock "is at all times subject to the

[blocker provision]."  *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 15 (2d Cir. 2001).

Thus, as with an individual defendant, the alleged group's "right to acquire" – and the

Company's corresponding contractual obligation to provide – would never have exceeded the

10% allowed by the Blocker Provisions.  All the preceding arguments for the effectiveness of the

Blocker Provisions would be equally applicable to any alleged "group" as they were for Hudson

Bay Fund individually, as well as to WPCS itself.  Further, it is clear that WPCS, the entity on behalf of whom Plaintiff purportedly brings this action, did not view Defendants as a group, as WPCS agreed to the Blocker Provisions by issuing the Notes and Warrants to the Defendants and expressly recognized that Defendants were not acting as a group.  Accordingly, Plaintiff has failed to show that this alleged "group" actually *did* hold in excess of 10% of the outstanding common stock of WPCS or ever had the "right to acquire" in excess of 10%.

### C.     The Complaint Fails to Match Purchases to Sales.

Finally, a basic and quite sensical requirement of a Section 16(b) claim is that the complaint match a set of purchases to a set of sales that occurred within a six-month period.  If a complaint fails to do this, the complaint must be dismissed.[15]

Plaintiff does not allege even a single matching purchase and sale executed by Hudson Bay Fund, Capital Management, or any other Defendant.  Plaintiff claims that the Warrants were exercised in October 2013 and an amendment was made in November 2013, but then merely alleges in conclusory fashion:  "During the three months ending in January 31, 2014, the Notes were converted into over 13,000,000 shares of Common Stock.  Within six months of the aforementioned purchase of Common Stock, Defendants sold over 13 million shares of Common Stock…"  Compl. ¶ 52.  This vague description, which is indefinite as to time and volume, is simply inadequate.  As Plaintiff has failed to plead this element, his claim must be dismissed.

### CONCLUSION

Based on the foregoing, defendant Hudson Bay Fund respectfully requests that this Court dismiss the Complaint insofar as it is asserted against Hudson Bay Fund.

---

[15] *See, e.g.*, *Gibbons v. Malone*, 801 F. Supp. 2d 243, 248 (S.D.N.Y. 2011) *aff'd*, 703 F.3d 595 (2d Cir. 2013); *Bennigson v. Huntsman*, 13-cv-452 (KBF), 2013 WL 5348461 (S.D.N.Y. Sept. 24, 2013).

Dated: New York, New York
September 24, 2014

SCHULTE ROTH & ZABEL LLP


By:   s/ Michael E. Swartz
      Michael E. Swartz
      Randall T. Adams

      919 Third Avenue
      New York, NY  10022
      Telephone: 212.756.2000
      Facsimile: 212.593.5955
      E-mail: Michael.Swartz@srz.com
              Randall.Adams@srz.com


*Attorneys for Defendant Hudson Bay Master Fund Ltd.*