```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ERIC GREENBERG,                         :
                                        :
                      Plaintiff,        :        14cv5226 (DLC)
                                        :
          -v-                           :        OPINION & ORDER
                                        :
Hudson Bay Master Fund Ltd., Iroquois   :
Master Fund Ltd., American Capital      :
Management LLC, GRQ Consultants, Inc.   :
401K, Barry Honig, Richard Molinsky,    :
and WPCS International Incorporated,     :
                                        :
                      Defendants.       :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiff:

Jack Gerald Fruchter
Mitchell M.Z. Twersky
Jeffrey S. Abraham
Mark S. Hamill
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 2805
New York, NY 10119

For Defendants Iroquois Master Fund Ltd. and American Capital
Management LLC

Thomas James Fleming
Renee Michele Zaytsev
Olshan Frome Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

DENISE COTE, District Judge:

     The plaintiff brings this case under Section 16(b)

("Section 16(b)") of the Securities Exchange Act of 1934

("Exchange Act") to recover on behalf of WPCS International Inc. ("WPCS") short-swing insider trading profits earned by Iroquois Master Fund Ltd. ("Iroquois") and American Capital Management ("ACM") (collectively "Defendants") while they were statutory insiders of WPCS.[1]  The Defendants have moved to dismiss the complaint, largely on the ground that their investment in WPCS is governed by an agreement that contains a conversion cap, which operates as a matter of law to prevent any one of them from becoming a beneficial owner of more than 10% of the company's shares.  The plaintiff's allegation that investors have formed a Section 13(d) group is sufficient here to require denial of the motion to dismiss.

The plaintiff Eric Greenberg ("Greenberg") is a shareholder of WPCS.  WPCS is a Delaware corporation whose common stock is registered with the Securities and Exchange Commission ("SEC"). Defendants, also WPCS shareholders, are companies organized under the laws of the Cayman Islands.  Greenberg initiated this action on July 14, 2014, and following a motion to dismiss by Hudson Bay, amended the complaint on October 15 ("Complaint"). Defendants and Hudson Bay moved to dismiss the Complaint on November 10.  That motion was fully submitted on December 12.

---

[1] Hudson Bay Master Fund Ltd. ("Hudson Bay"), GRQ Consultants, Inc. 401K, Barry Honig, and Richard Molinsky have been dismissed from this action.

On January 30, 2015, Greenberg stipulated to the dismissal of Hudson Bay from this action.

The Defendants and others participated in a private offering, infusing WPCS with capital in December 2012 in exchange for WPCS notes ("Notes") and warrants ("Warrants").  A year later, the Defendants and Hudson Bay sold BTX Trader, LLC ("BTX") to WPCS.  The plaintiff believes that the sale of BTX provided the Defendants with the opportunity to make illegal short-swing profits on their investment in WPCS.  For roughly two weeks following the announcement of the sale of BTX to WPCS, the volume trading of WPCS stock increased exponentially and its stock price fluctuated greatly.

Since each of the Defendants owned less than 10% of the outstanding shares of WPCS, the plaintiff has alleged that the Defendants and Hudson Bay formed a group to purchase and sell WPCS stock in violation of the securities laws.  The plaintiff relies on two events to infer the formation of a group, and its concomitant purchase and sale of WPCS stock: their coordinated investment in WPCS and their combined purchase of BTX and its subsequent sale to WPCS.

**BACKGROUND**

The following facts are asserted in the Complaint and taken from documents integral to those claims.  On December 4, 2012, WPCS obtained $4 million when it entered into a Securities

Purchase Agreement ("SPA") with Defendants, Hudson Bay, and others (collectively "Buyers"). In exchange for the investment, the Buyers received $4 million in principal amount of convertible Notes and Warrants to purchase 15,923,567 shares of WPCS's common stock.[2] In connection with the SPA, WPCS also entered into a registration rights agreement with Buyers ("Rights Agreement"). Iroquois' and ACM's Notes constitute approximately 31% and 3%, respectively, of the total value of the Notes issued pursuant to the SPA.

The SPA and Rights Agreement contain provisions describing the circumstances and manner in which the Buyers could purchase additional WPCS securities and sell the WPCS common stock obtained through conversion of the Notes. The Rights Agreement also describes scenarios in which the Buyers would be able to register their securities with the SEC. In each of these scenarios, the Rights Agreement requires that notice be given to each Buyer of the impending registration, and permits each Buyer to participate in the registration. If a particular registration was oversubscribed by the Buyers, the Rights Agreement describes a <u>pro rata</u> method of reducing the number of shares to be registered.

---

[2] According to the SPA, Iroquois received $1,257,500 in Notes and Warrants for 5,005,971 shares. ACM received $100,000 in Notes and Warrants for 389,089 shares.

The SPA explains that the use of a single agreement was for the convenience of WPCS and should not create a presumption that the Buyers were acting as a group.  It provides:

> The obligations of each Buyer under the [SPA and Rights Agreement] are several and not joint with the obligations of any other Buyer. . . .  Nothing contained herein or in any other [document], and no action taken by any Buyer pursuant hereto . . ., shall be deemed to constitute the Buyers as . . . a partnership, an association, a joint venture, or any other kind of group or entity, or create a presumption that the Buyers are in any way acting in concert . . . .  The decision of each Buyer to purchase securities pursuant to [any document relating to this transaction] has been made by such buyer independently of any other Buyer. . . .  Each Buyer shall be entitled to independently protect and enforce its rights . . . .  The use of a single agreement to effectuate the purchase and sale of the securities contemplated hereby was solely in the control of [WCPS] . . . and was done solely for the convenience of [WPCS] . . . .  It is expressly understood and agreed that each provision contained in [the SPA and other transaction documents] is between [WPCS], each subsidiary and a Buyer, solely, . . . and not between and among the Buyers.

(Emphasis supplied.)  The Rights Agreement contains a similar provision.

Recognizing the impact of Section 16(b), the Notes contain a provision limiting the right of the holder to convert the Notes to achieve ownership in excess of 9.99% of common stock.  Specifically, the Notes provide that:

> Notwithstanding anything to the contrary contained in this Note, this Note shall not be exercisable by the Holder hereof, and [WPCS] shall not effect any conversion . . . to the extent (but only to the extent) that giving effect to such conversion or other

> share issuance hereunder <u>the Holder</u> (together with its
> affiliates) <u>would beneficially own in excess of 9.99%</u>
> . . . of the Common Stock. . . .  For purposes of this
> paragraph, beneficial ownership . . . shall be
> determined in accordance with Section 13(d).

(Emphasis supplied.)  The Warrants contain a similar provision:

> Notwithstanding anything to the contrary contained in
> this Warrant, this Note shall not be exercisable by
> the Holder hereof to the extent (but only to the
> extent) that giving effect to such conversion or other
> share issuance hereunder the Holder (together with its
> affiliates) would beneficially own in excess of 9.99%
> . . . of the Common Stock. . . .  For purposes of this
> paragraph, beneficial ownership . . . shall be
> determined in accordance with Section 13(d).

Provisions such as these are known as "blocker provisions" or

"conversion caps."

The Complaint alleges that the blocker provisions were

ineffective because WPCS did not know how many of its shares

were outstanding.  In a December 19, 2013, earnings call with

shareholders WPCS executives did not identify the number of

shares that were outstanding.  In a Form 8-K, filed on December

20, the day after the earnings call, however, WPCS disclosed the

number of outstanding shares through December 19.[3]  Taken

collectively, and based on documents filed by their investors

and managers, the Defendants and Hudson Bay own almost twenty

percent of WPCS shares.

---

[3] Judicial notice may be taken of a regulatory filing although
not to prove the truth of its contents.  <u>Staehr v. Hartford Fin.
Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008).

On October 25, 2013, WPCS amended certain conversion features of the Warrants and Notes.  Pursuant to the amendment, the Buyers exchanged 154,961 of their Warrants for 38,740 shares of common stock and new warrants to purchase 154,961 shares of common stock ("New Warrants").  In exchange, Buyers waived various provisions of the original Warrants that favored the Buyers, including anti-dilution protection.  On November 5, WPCS amended the Notes to eliminate certain redemption rights, alter the interest rate payable on the Notes, and change the term of the instrument.  As a consequence of these modifications, WPCS determined that the original Notes were extinguished and issued new notes ("New Notes").  The New Notes and New Warrants retained the same blocking provisions as contained in the Notes and Warrants.[4]

BTX was a technology start-up company seeking to provide access to the Bitcoin market.  The Defendants and Hudson Bay, among others, owned BTX and incorporated it on December 4, 2013.  In connection with the formation of BTX, Defendants acquired software and intellectual property rights for an aggregate of $439,408 in the WPCS New Notes and $1,185,000 in cash.

---

[4] While the Complaint does not explicitly state that the New Notes retained the original blocker provisions, no party has argued that the blocker provisions were eliminated in these amendments.

On December 17, 2013, WPCS announced that it had acquired BTX in exchange for convertible shares ("BTX Transaction"). WPCS issued an aggregate of 2,438 shares of Series E Convertible Preferred Stock for $2,430,000, and warrants to purchase up to 1,500,000 share of Common Stock in exchange for BTX. Following the BTX announcement, trading volume of WPCS increased dramatically from about 100,000 shares of the common stock per day to about three million shares, and ultimately thirty-three million on December 27. From December 17 to December 31, the market price of the WPCS common stock fluctuated between $1.51 and $3.13 per share. During this period, the Complaint asserts that the Defendants converted the New Notes into shares and sold these at a profit.[5] One writer stated that this transaction "at worst, looked like a cynical ploy by a pair of hedge funds to take advantage of the Bitcoin frenzy to create some excitement around the [WPCS] stock so the funds could get out from under a troubled loan [to WPCS]." This lawsuit followed, seeking disgorgement of the profits obtained during this period on behalf of WPCS.

---

[5] The Complaint describes a number of disclosures WPCS made regarding the conversion of the Notes and New Notes between July 30, 2013 and January 13, 2014. WPCS's disclosures did not include the names of the converting shareholders. There were, however, only six Buyers of the Notes. Between December 17 and 19, 2013, all six Buyers converted shares. By necessity, the Defendants were among the Buyers converting shares in this period.

**DISCUSSION**

When deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement." Id. (citation omitted).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id.

"For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit."  Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted).  The Complaint references the Notes, Warrants, SPA, Rights Agreement, and Schedule 13G and 14A SEC filings in the Complaint.[6]  Accordingly, these documents may be

---

[6] A Schedule 13G is an SEC form used to disclose beneficial ownership of five percent or more of a company's equity

considered at the motion to dismiss stage.  The Court may also take judicial notice of the fact that public disclosures were made through other filings with the SEC.  Staehr, 547 F.3d at 425.

"Section 16(b) of the Exchange Act requires that profits of short-swing trading be disgorged to the issuer of the stock." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001). "The statute aims to deter insiders from taking unfair advantage of confidential company information to realize short-swing profits on trades in the company's stock."  Id. at 122.  Short-swing trading is generally defined as "the purchase and sale (or vice versa) of a company's stock within a six-month period by persons deemed to be insiders . . . ."  Id. at 121 (citation omitted).  Statutory insiders are persons who "directly or indirectly [are] the beneficial owners of more than 10% of any class of any equity security . . . ."  15 U.S.C. § 78p(a)(1). Section 16(b) only applies to transactions where the individual was a statutory insider at both the time of the purchase and the time of sale.  Foremost-McKesson, Inc. v. Provident Sec. Co.,

---

securities when the purchaser has no intent to change or influence the issuer or to act in concert with others who so intend.  See 17 C.F.R. § 240.13d-1(c) (1999); Hallwood Realty Partners, L.P. v. Gotham Partners, L.P., 286 F.3d 613, 616 n.4 (2d Cir. 2002).  Schedule 14A sets out the minimum disclosures that must be made prior to the solicitation of proxies. Maldonado v. Flynn, 597 F.2d 789, 797 n.9 (2d Cir. 1979); United States v. Dixon, 536 F.2d 1388, 1391 (2d Cir. 1976).

423 U.S. 232, 235 (1976).  Therefore, a purchase that pushes the
buyer over the ten percent threshold cannot be matched with a
sale for Section 16(b) liability.  Id.  Because Section 16(b)
imposes liability without fault within its narrow limits, courts
are "reluctant to exceed a literal, mechanical application of
the statutory text in determining who may be subject to
liability, even though in some cases a broader view of statutory
liability could work to eliminate an evil that Congress sought
to correct through § 16(b)."  Gollust v. Mendell, 501 U.S. 115,
122 (1991) (citation omitted); see also Gibbons v. Malone, 703
F.3d 595, 599 (2d Cir. 2013).

There is no allegation that any single defendant
beneficially owned more than ten percent of any class of WPCS
stock.  The plaintiff's theory of Section 16(b) liability is
that the Defendants and Hudson Bay formed a shareholder group
that collectively owned more than ten percent of WPCS common
stock.  Relying on this contention, it asserts that the October
and November 2013 amendments to the Notes and Warrants
constitute a purchase that may be paired with the sales of WPCS
stock that occurred between December 2013 and January 2014,
thereby requiring disgorgement of the profits obtained.

Defendants move to dismiss on four separate grounds.
Defendants argue they are not subject to disgorgement under
Section 16(b) because they did not form a shareholder group, a

prerequisite to finding that they beneficially owned enough shares of WPCS common stocks to be deemed statutory insiders. Defendants further ague that, even if they did form a shareholder group, the blocker provisions in the Notes and Warrants preclude them from beneficially owning as a group ten percent or more of WPCS securities.  Iroquois also argues that it does not beneficially own the shares at issue as the shares were held by a registered investment adviser.  Defendants also argue that the plaintiff has not adequately matched purchases and sales of securities within six months as required to plead a Section 16(b) violation.  Each of these arguments will be considered in turn.

**I. The Complaint Plausibly Alleges a Shareholder Group.**

In order to be subject to liability under Section 16(b), a shareholder must beneficially own ten percent of a class of securities.  The Exchange Act does not define the term beneficial owner as it is used in Section 16(b).  Morales, 249 F.3d at 122.  To fill this gap, the SEC promulgated regulations stating that the term beneficial owner as used in Section 16(d) as "any person who is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and there rules thereunder." 17 C.F.R. § 240.16a-1(a)(1).  Under Rule 13d-3(d)(1), a person is deemed to be a holder of the underlying security "if that person has the right to acquire beneficial ownership of such

security . . .  within sixty days . . . through the conversion

of a security . . . ."  Id. § 240.13d-3(d)(1).

The rules promulgated by the SEC in connection with Section

13(d) define a shareholder group as existing "[w]hen two or more

persons agree to act together for the purpose of acquiring,

holding, voting or disposing of equity securities of an issuer."

Id. § 240.13d-5(b)(1); see also Roth v. Jennings, 489 F.3d 499,

507-508 (2d Cir. 2007) ("[I]f two of more entities agree to act

together for any of the listed purposes, a group is thereby

formed." (citation omitted)).  When a shareholder group is

formed, "each person in the group shall be deemed to be the

beneficial owner of all equity securities of that issuer

beneficially owned by any member of the group."  Roth, 489 F.3d

at 508 (citing 17 C.F.R. § 240.13d-5(b)(1)).  The agreement to

form a shareholder group may be formal or informal, and may be

proven by direct or circumstantial evidence.  Wellman v.

Dickinson, 682 F.2d 355, 363 (2d Cir. 1982).  "Whether the

requisite agreement exists is a question of fact."  Morales, 249

F.3d at 124.  A complaint must still, however, plead sufficient

factual allegations to plausibly support the inference that an

agreement was made.  Iqbal, 556 U.S. at 678; see also Segal v.

Gordon, 467 F.2d 602, 608 (2d Cir. 1972) (finding that the lack

of specificity in alleging a Section 13(d) group required

dismissal of the claim).

There are two sets of facts alleged in the Complaint to support the allegation that the Defendants and Hudson Bay formed a shareholder group.  The first involves the simultaneous investment in WPCS and their acquisition of rights through the Rights Agreement and SPA.  The second is the BTX Transaction.[7] The second set of facts is sufficient to plausibly allege the formation of an agreement between the Defendants and Hudson Bay for the purpose of acquiring, holding, voting or disposing of WPCS's equity securities.

The transaction documents provide little support for the plaintiff's contention that the Defendants formed a shareholder group with Hudson Bay.  The Complaint highlights the provisions of the SPA and Rights Agreement that require notice to all Buyers in connection with the registration of securities, and describe a pro rata method for allocating the right to register securities in the event that Buyers wish to register more securities than WPCS deems prudent.  The use of a single document in a private placement is not unusual, and courts have routinely rejected the argument that transaction documents granting investors parallel rights and obligations create an

---

[7] The plaintiff's opposition brief also refers to another transaction that occurred in 2013 where Hudson Bay and Defendants worked together.  The plaintiff did not include any allegations about this transaction in the original complaint or the October 2014 amended complaint.  Accordingly, these allegations are not included in the pleadings and are not considered here.

inference that a shareholder group was formed.  See In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 544, 552-53 (S.D.N.Y. 2014); Chechele v. Scheetz, 819 F. Supp. 2d 342, 348-49 (S.D.N.Y. 2011); Litzler v. CC Investments, L.D.C., 411 F. Supp. 2d 411, 415-16 (S.D.N.Y. 2006); cf. Morales, 249 F.3d at 126-127 ("[T]he [parallel] lock-up provisions in the Sales Agreement, viewed in light of the other facts, suggest the [the defendants] reached a mutual agreement with respect to holding and disposing of shares . . . ." (emphasis added)).  Furthermore, the SPA and Rights Agreement specifically assert that the rights are separately granted and the use of a single document is for the convenience of WPCS.

The other set of allegations supporting the existence of agreement is the BTX Transaction.  But, the BTX Transaction occurred in December 2013, and the Section 16(b) disgorgement penalty only applies to a group if the group was formed prior to both the date of the purchase and sale of securities that is the basis of the Section 16(b) claim.  See Foremost-McKesson, 423 U.S. at 234.  Plaintiff has identified a "purchase" in this case as occurring on October 25 and November 5, 2013 through the amendments to the Notes and Warrants.

The Complaint alleges that Defendants and Hudson Bay shared a common objective to dispose of WPCS securities, and plausibly alleges that they worked together for some time in advance of

the December 2013 BTX Transaction to achieve that objective.
The steps necessary to prepare for the incorporation of BTX and
subsequent sale to WPCS -- such as opportunity sourcing,
negotiating, drafting, and due diligence -- necessarily predated
the date of the BTX Transaction.  Moreover, the Defendants and
Hudson Bay used WPCS stock to purchase the technology for BTX,
and received WPCS stock from WPCS in exchange for BTX.  Taken
together, these allegations are sufficient to plausibly allege
the formation of a group in advance of October 25, 2013.

## II. The Conversion Cap

The Defendants argue the blocker provisions in the Notes
and Warrants apply with equal force to any group that might be
formed, and therefore preclude them from collectively owning
more than 9.99% of WPCS shares.  This argument fails.

Under Rule 13d-3(d)(1), a person is deemed to be a holder
of the underlying security "if that person has the right to
acquire beneficial ownership of such security . . . within sixty
days . . . through the conversion of a security. . . ."  17
C.F.R. § 240.13d-3(d)(1) (emphasis added).  Thus, Rule 13d
depends on the right to acquire a security.  Levy v. Southbrook
Intern. Investments, Ltd., 263 F.3d 10, 15 (2d Cir. 2001).  As a
result, holders of freely convertible securities, including
warrants and notes, are generally deemed to be beneficial owners
of the underlying common stock.  Where conversion rights are

limited, however, a holder of a convertible security may not be deemed the beneficial owner of the underlying common stock.  A blocker provision limits the right of a holder to convert securities above a specified amount.  Id. at 16.  Thus, "as long as the conversion cap . . . is binding, [the defendant] cannot be the beneficial owner of more than" the amount of stock specified in the conversion cap.  Id. at 16; see also Levner v. Prince Alwaleed, 61 F.3d 8, 9 (2d Cir. 1995); Decker v. Advantage Fund, Ltd., 362 F.3d 593, 596-97 (9th Cir. 2004); Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide § 2.03, at 170-173 (4th ed. 2012).  "At any one time, [the defendant] cannot hold more than that amount of stock because it does not have the right to acquire more than [the specified amount of] common stock within sixty days of each divestment." Levy, 263 F.3d at 16 (citation omitted) (emphasis added).

Both the Notes and the Warrants contain a conversion cap. While this conversion cap is binding on a single shareholder, it does not shield a shareholder from liability when that shareholder acts as a part of a group.  Each individual shareholder has no "right" to convert shares in excess of the cap, but by acting as a group shareholders may acquire shares in excess of the caps on each shareholder's rights.

The Defendants emphasize that the conversion cap applied to each shareholders' "affiliates," citing to Log On Am., Inc. v.

Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435 (S.D.N.Y. 2001).  They reason that members of a group should be deemed affiliates and encompassed by the cap.  But the term affiliates refers to "a corporation that is related to another corporation by shareholdings or other means of control [such as] a subsidiary, parent, or sibling corporation," Black's Law Dictionary 69 (10th ed. 2014), and there is no reason to find that it should be given a broader meaning here.  Accordingly, since the other alleged members of the group are not affiliates of each other, they are not shielded by the conversion cap. Defendants' reliance on Log On Am., which involved a conversion cap with similar language, is misplaced.  In Log On Am., the court separately determined that the plaintiff had not plausibly alleged a shareholder group and that the conversion cap was binding and enforceable.  Id. at 448-449.

The Defendants note that the conversion cap instructs that beneficial ownership shall be calculated according to Section 13(d), which also contains provisions for determining the ownership of a shareholder group.  17 C.F.R. § 240.13d-5(b)(1). But, the Defendants admit that WPCS did not view them as a group.  They do not explain, therefore, how WPCS could have acted to enforce the conversion caps that explicitly operated vis-à-vis individual shareholders in the group that the plaintiff alleges existed here.

## III. Iroquois as Beneficial Owner

Iroquois also argues that it cannot be liable for a violation of Section 16(b) because its investment advisor, Iroquois Capital Management, L.L.C. ("ICM"), and not Iroquois is the beneficial owner of its WPCS shares, and, as an investment advisor, ICM is exempt from Section 16(b) liability.  17 C.F.R. § 16a-1(a)(1)(V).  The plaintiff has adequately alleged that Iroquois is the beneficial owner of the shares.

Section 13(d) provides that a beneficial owner of a security includes "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or (2) Investment power which includes the power to dispose, or to direct the disposition of, such security."  Id. § 240.13d-3(a). The regulations contemplate that a purchaser may not avoid Section 16(b) liability simply by delegating voting and investment authority to a third party.  An entity may be the beneficial owner of securities even when it only indirectly shares or possesses voting and investment power.  Id.

In Huppe v. WPCS Intern. Inc., 670 F.3d 214 (2d Cir. 2012), the Court of Appeals for the Second Circuit rejected the argument that a limited partner could avoid Section 16(b) liability by delegating all voting and investment power to the

general partner, which in turn delegated voting and investment power to agents.  Id. at 221.  Because the delegating party maintained a principal-agent relationship with the other party, the principal remained the beneficial owner of securities for Section 16(b) purposes.  Id.; see also Analytical Surveys Inc., v. Tonga Partners L.P., 684 F.3d 36, 51-52 (2d Cir. 2012); cf. Romeo & Dye, supra, § 2.03, at 200 ("Where a client of an investment adviser cedes all investment and voting discretion to the adviser, who subsequently becomes a member of a Section 13(d) group . . ., the client should not be considered a member of the group . . . .  If, however, the client and the investment adviser share voting or investment power over the securities in the client's portfolio, the client, too, may be deemed a member of the group.").

The plaintiff alleges that, although ICM reported that it was the beneficial owner of the Notes and Warrants in the 13G filings, Iroquois remained the beneficial owner of the Notes. In the Schedule 14A filings referenced by the plaintiff in the Complaint, and cited by Iroquois, WPCS lists Iroquois -- and not ICM -- as the beneficial owner of WPCS securities.  The precise nature of the relationship between Iroquois and ICM need not be alleged with particularity in the Complaint.  By alleging that Iroquois maintained an active role in the disposal of WPCS securities, the plaintiff has alleged sufficient facts to plead

that Iroquois was the beneficial owner of the securities held by ICM.

In support of the motion to dismiss, the Defendants primarily rely on Egghead.Com, Inc. v. Brookhaven Capital Mgmt. Co., 340 F.3d 79 (2d Cir. 2003), for the proposition that securities held by an investment adviser may not be used in calculating the beneficial ownership of a group. Egghead, however, confronted the question of whether a registered investment adviser could be deemed the beneficial owner of securities when alleged to be a member of a shareholder group. Id. at 84-85. It did not purport to answer the question of whether a client who retains an economic interest in the securities remains the beneficial owner of securities despite delegations to its investment advisor.

**IV. The Plaintiff Has Adequately Pleaded a Matched Purchase and Sale.**

Section 16(b) requires that a purchase and sale of securities be made within a six month period. The Defendants argue that the plaintiff has failed to adequately match the purchase and sale of securities within a six month period. The Defendants do not dispute that the plaintiff has adequately alleged a purchase in October and November through the amendments to the existing notes and issuance of its replacement. They do assert, however, that the plaintiff has

failed to plead that the Defendants sold securities in December 2013 and January of 2013.  This argument fails.

In support of the assertion that the Defendants sold WPCS shares within six months of the amendments, the plaintiff identifies WPCS disclosures indicating that the Defendants converted shares in December 2013, the elevated trading volume and price of WPCS securities during, and that approximately 75% of the Notes had been converted by January 13, 2014.  Taken together, these allegations are sufficient to plead in a non-conclusory fashion that the Defendants sold WPCS shares during the relevant period.  Accordingly, the plaintiff has adequately alleged a matched purchase and sales of WPCS securities.

**CONCLUSION**

The Defendants' November 10 motion to dismiss is denied.

Dated:    New York, New York
          May 12, 2015

                                    _____
                                    DENISE COTE
                          United States District Judge